224 A.2d 383.

COMBINED INSURANCE COMPANY OF AMERICA *vs.*
JEANETTE DE ANGELIS SALISBURY *et al.*

DECEMBER 2, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J.  The complainant brought this bill in equity

praying that the respondents be directed to interplead for the right to certain commissions which it is prepared to pay to the person who shall be determined to be entitled thereto. A decree of interpleader was entered and thereafter one of the respondents filed an answer and the other an answer in the nature of a cross-bill. After a hearing before a justice of the superior court on the bill, answer and proof, a judgment was entered awarding the commissions involved in this proceeding to the respondent Jeanette De Angelis Salisbury. The cause is before us upon the appeal of the respondent Norma (De Angelis) Cowart, individually and as administratrix of the estate of Joseph De Angelis.

This controversy arose from the following undisputed facts. On June 1, 1952 the late Joseph De Angelis entered into a written contract of employment with complainant, hereinafter referred to as the company, engaging him as a district manager and providing for the payment of commissions as therein specified. Paragraph 19 provides in part that if any one of three events therein specified occurs, the company agrees to pay to Mr. De Angelis certain monthly payments if living at the time the payment becomes due, or if not then living to respondent Jeanette De Angelis Salisbury, his then wife, if living at the time payment becomes due, or if not then living then to his daughter, respondent Norma De Angelis (Cowart), if living at the time payment becomes due.

The contingencies upon which such payment would become due under paragraph 19 are (1) in the event the district manager wished to retire after six years' service, or (2) if the agreement was terminated by the company after two years' service for any cause other than one or more of those set forth in paragraph 18, or (3) in the event of the death of the district manager while he was serving as such for the company.

None of the events provided for in paragraph 19 hap-

pened, but on June 30, 1959 Mr. De Angelis and the company entered into a written agreement, entitled "Termination Amendment," terminating his employment with the company by mutual consent. Sometime thereafter, in 1959 or 1960, he obtained a divorce from his wife. He died in 1962, intestate, and his daughter Norma Cowart was appointed and qualified as administratrix. It is admitted that subsequent to the termination of his employment he was entitled to certain commissions on policies written by him or under his direction while employed by the company and that since his death renewal commissions have accrued and will continue to accrue in the future. His former wife and his daughter, individually and as administratrix of his estate, claim the right to the commissions, and their conflicting claims caused the company to bring the instant bill.

After the hearing the trial justice filed a written decision and entered a judgment based thereon holding that respondent Jeanette De Angelis Salisbury was entitled to all commissions which had accrued to the date of the judgment and which would accrue in the future under the terms of the June 1, 1952 agreement, as amended on June 30, 1959. He based the judgment on his findings that (1) the validity and effect of the June 1, 1952 contract was governed by Illinois Revised Statutes 1961, ch. 3, §601, and (2) it was the intention of Mr. DeAngelis that Jeanette De Angelis Salisbury should receive the commissions payable on his death under the June 1, 1952 contract, as amended by the June 30, 1959 amendment.

It is our opinion that the trial justice erred and that the estate of Mr. De Angelis is entitled to the commissions in question.

For the sake of brevity and clarity we shall refer to the "Termination Amendment" as the "amendment." Although the amendment clearly terminated Mr. De Angelis' employment with the company, it does not necessarily follow that it terminated the contract as such. We are not un-

mindful that there is language in the amendment expressly stating that the June 1, 1952 contract is being terminated by mutual consent of the parties. However, when read as a whole there is other language equally strong indicating that what the parties intended by the execution of the amendment, and what they actually accomplished, was a modification of the original contract of employment.

Paragraph 3 of the amendment reads as follows:

> "The District Manager hereby releases and forever discharges the Company of any and all further commissions, claims, demands, obligations or liabilities under said terminated contract, except the obligation of the Company to pay to the District Manager the commissions payable under Paragraph (19) of the District Manager's Standard Contract (the parties hereto hereby agree that the net commissions earned by the District Manager during the twelve (12) months immediately preceding June 30, 1959, were $15,198.02), and the renewal commissions to which he is entitled under the last sentence of Paragraph (22)(a) of the District Manager's Standard Contract."

It is clear from that language, particularly the words "except the obligation of the Company to pay to the District Manager the commissions payable under Paragraph (19)," that paragraph 19 of the original contract remains in full force and effect.

Paragraph 2 of the amendment provides that:

> "The termination agreed upon hereunder shall have exactly the same effect as if the District Manager's Standard Contract had been terminated under Paragraph (15) thereof, and all of the provisions in said Contract applicable after termination thereof shall be fully applicable to the termination agreed to hereunder."

Paragraph 15 of the original contract provides that:

> "This Agreement may be terminated by either party hereto by giving to the other thirty (30) days' notice in writing to that effect, except as otherwise provided herein."

The amendment also contains the following provision:

"Nothing herein contained shall be held to alter or modify said District Manager's Standard Contract except as specifically set forth above."

The language of this provision and the last part of paragraph 2 of the amendment reinforce our belief that the amendment modified the original contract but kept alive all provisions not inconsistent with the provisions of the amendment or not specifically excluded therein. In addition to paragraph 19 of the original contract, the amendment kept alive paragraph 20 of that contract which reads as follows:

"This Agreement shall not become effective until executed for the Company in Chicago, Illinois by a properly authorized officer after execution by the District Manager, and shall be construed according to the laws of the State of Illinois, and shall not be assignable by the District Manager in any event whatsoever except with the written consent of the Company's President or Executive Vice-President, but this Agreement shall be binding upon and inure to the benefit of any successors and assigns of the Company, whether by sale, conversion, consolidation, merger, or reorganization."

The claim of Jeanette De Angelis Salisbury depends upon the validity of paragraph 19 of the original contract. She takes under that provision—or she does not take at all. The provisions of paragraph 19 providing for payment to the designated beneficiaries after the death of Mr. De Angelis, who had retained the right to change beneficiaries, were clearly testamentary in character. Since the contract was not executed in accordance with the requirements for the execution of a will, it is invalid unless saved by some other statute. Under paragraph 20 of the original contract the parties agreed that the contract "shall be construed according to the laws of the State of Illinois * * *."

The contention is made that the contract involved in this proceeding comes within the contemplation of "An

Act concerning rights of a person entitled to succeed upon the death of another person to an interest in an insurance, annuity or endowment contract, or in a pension, retirement, death benefit, stock bonus or profit-sharing contract, plan, system or trust," Ill. Rev. Stat. 1961, ch. 3, §601, which in pertinent part reads as follows:

"Designation — Effect of laws relative to attestation of wills — Defeasance.] §1. The designation in accordance with the terms of any insurance, annuity or endowment contract, or the designation in any agreement issued or entered into by an insurance company in connection therewith, supplemental thereto or in settlement thereof, or the designation under a pension, retirement, death benefit, stock bonus or profit-sharing contract, plan, system or trust, of any person to be a beneficiary, payee or owner of any right, title or interest thereunder upon the death of another, shall not be subject to or defeated or impaired by any statute or law relating to the signing and attestation of wills, even though such designation is revocable or the rights of such beneficiary, payee or owner are otherwise subject to defeasance."

It is our opinion that the June 1, 1952 contract, as modified by the June 30, 1959 amendment, does not come within the contemplation of this statute. To be more specific we hold that the contract in this case, as modified by the amendment, does not involve "an interest in an insurance, annuity or endowment contract, or in a pension, retirement, death benefit, stock bonus or profit-sharing contract, plan, system or trust."

Paragraph 19 of the original contract of employment, as modified by the amendment, merely provides a method of payment of commissions. It is testamentary in character and, not coming within the purview of the cited Illinois statute, *supra,* is invalid under Illinois law because it was not executed in accordance with the requirements of the laws of that state for the execution of wills. See Ill. Rev.

Stat. 1961, ch. 3, §43. The commissions thus pass as intestate property.

In the circumstances the estate of Joseph De Angelis is entitled to all commissions which have accrued and which shall accrue in the future under the terms of the original contract as modified by the amendment.

The judgment appealed from awarded a counsel fee of $100 to the complainant for the payment of a counsel fee and costs for the bringing of the instant bill, such sum to be deducted from the commissions payable. No objection appears in the record to the payment of such fee and costs. We believe that order is fair and reasonable and we also believe complainant is entitled to an additional sum of $100 for its appearance in this court.

The appeal of the respondent Norma Cowart is sustained in part, the judgment appealed from is reversed in part, and the cause is remanded to the superior court for entry of judgment in accordance with this opinion and for further proceedings.

*Boss, Conlan, Keenan & Rice,* for complainant.

*Charles H. McLaughlin,* for appellant Norma Cowart, individually; John Tramonti, Jr., for appellant Norma Cowart, Adm'x Estate of Joseph De Angelis.

*James F. Murphy,* for appellee Jeanette De Angelis Salisbury.